**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD MEEK, <br><br> Plaintiff, <br><br> v. <br><br> ARCHIBALD & MEEK, INC. and JOSEPH ARCHIBALD III, <br><br> Defendants. | No. 21-cv-02397 <br> Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard Meek (Meek) has filed suit against defendants Archibald & Meek, Inc. (A&M) and Joseph Archibald III (Archibald) (collectively, Defendants), asserting several claims resulting from A&M's failure to pay Meek an alleged amount due under an agreement between Meek and A&M. R. 1., Compl.[1][2] Meek now moves the Court to enter a temporary restraining order and preliminary injunction against A&M pursuant to Federal Rule of Civil Procedure 65(a). R. 4, Motion. For the reasons stated below, the Court denies the motion.

**Background**

A&M supplies electrical wholesale distributors with product inventory and represents lighting manufacturers. Compl. ¶ 20. As part of its role, it also bids on large-scale municipal and roadway lighting contracts and projects. If A&M receives

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

[2] Meek has filed a Verified Complaint.

a successful bid from an electrical wholesale distributor for products, it gets a commission on that sale. *Id.* From its founding until 2006, it was known as Archibald & Hammel, when it changed its name to Archibald & Meek, Inc. *Id.* ¶¶ 21, 29.

In 1998, Archibald purchased a 100% stake in A&M from his father. Compl. ¶ 24. Meek began working at A&M in 2003. *Id.* ¶ 25. On October 1, 2005, Meek and A&M entered into an agreement known as the Archibald and Hamel Stockholders Agreement (the Stockholders Agreement), pursuant to which Meek would pay the company several hundred thousand dollars over a several year period for 50% of the company's shares. *Id.* ¶ 27. By 2005, Meek had made his payments and owned a 50% stake in the company. *Id.* ¶ 28.

Meek served in various roles at A&M from 2003 until late 2019, including serving as vice president from 2006 until 2019. Compl. ¶¶ 30, 33, 36. Since 2006, Archibald has served as A&M's president. *Id.* ¶ 33. In 2018, Meek and Archibald began to have a falling out; in 2018 and 2019, tensions between them increased; and on December 6, 2019, Archibald fired Meek. *Id.* ¶¶ 34–36. On April 8, 2020, Meek and A&M entered into a Settlement and Stock Repurchase Agreement (the Agreement) to settle the employment dispute between the parties and outline terms of A&M's purchase of Meek's stock in A&M. *Id.* ¶¶ 39, 41. The Agreement contains a choice of law provision which states that it "shall be governed by the substantive and procedural laws of the State of Delaware, without regard to any provisions thereof relating to conflicts of laws among different jurisdictions." Compl., Exh. 1, ¶ 8.1. Pursuant to the Agreement, Meek and A&M agreed, among other things, that: Meek

would sell all his shares in A&M back to the company, and A&M would buy back those shares; Meek would release A&M from any and all claims he might have against A&M; upon the Agreement's execution, Meek would resign as an officer and director of A&M; upon closing, Meek would deliver all his paper shares of stock to A&M; Meek would not compete with A&M for a one-year period starting on December 6, 2019 and ending on December 5, 2020; and A&M would provide Meek with monthly profit and loss statements until the closing. Compl. ¶¶ 42, 44–45, 64–67, 73.

The value of the company for the purposes of the stock sale price was to be determined by a detailed valuation mechanism. Compl. ¶ 42. According to Meek, once this valuation process was completed in February 2021, A&M was valued at $3,085,000.00. *Id.* ¶¶ 57, 59. Pursuant to Section 1.3 of the Agreement, once A&M's value has been determined, it "shall pay the Purchase Price for [Meek's] Stock in five (5) consecutive equal annual installments, with each installment including the interest on the unpaid balance at a rate of five percent (5%), payable beginning on April 30 of each year, beginning in 2021." *Id.* ¶ 60. According to Meek's calculations, because A&M was valued at $3,085,000.00 and he owned half of its shares, he is entitled to a payment of at least $1,542,500.00 spread over five equal annual payments of $308,500.00. *Id.* ¶ 61. Accounting for interest, A&M's first payment, which was due on April 30, 2021, should have been in the amount of $370,200.00. *Id.*

Meek calculates that A&M was and is to pay him $1,696,750.00 over five years, which includes interest. *Id.* ¶ 63.

Meek alleges that even though he complied with all of the terms of the Agreement, and A&M has indeed sent him monthly profit and loss statements from May 2020 through March 2021, A&M refused to make its first annual payment due on April 30, 2021, thereby breaching the Agreement. Compl. ¶¶ 69, 71–72, 73. On April 7, 2021, A&M first informed Meek that it did not have money to pay the April 30, 2021 payment and/or that it was in precarious financial straits and was considering whether to "simply closeup shop." *Id.* ¶¶ 86, 156. The monthly statements, though, showed that for each month except for one, A&M had more than $370,200.00 in its checking and saving accounts. *Id.* ¶ 84. For several of these months, it had well in excess of this amount in its checking and saving accounts. As of March 31, 2021, A&M had $546,440.62 in these accounts. *Id.*

In response to A&M's April 7, 2021 statement of its inability to pay Meek, Meek's counsel sent A&M's counsel a letter on April 12, 2021, confirming whether A&M had taken the necessary steps to capitalize itself, and whether it had undertaken other efforts obligated by the Agreement to raise cash to fulfill its contractual obligation to Meek. Compl. ¶¶ 97–99. A&M never responded to this letter. *Id.* ¶ 101, 103, 105. On April 28, 2021, A&M stated that it faced insolvency and its financial condition was worse that it thought. *Id.* ¶ 158.

On May 5, 2021, Meek initiated this lawsuit, asserting the following claims against Defendants: Count I for injunctive relief against A&M; Count II for breach of

4

contract against A&M; Count III for tortious interference with contract against Archibald; Count IV for unjust enrichment against Archibald; and Count V for breach of fiduciary duty against Archibald. Compl. Concurrently with filing the Complaint, Meek also filed a motion for temporary restraining order and preliminary injunction seeking the following relief: (i) requiring A&M to deposit the full amount due under the Agreement, $1,696,750.00, into an interest-bearing account with the Court until the Court determines whether A&M breached the Agreement; (ii) as an alternative to (i), requiring A&M to deposit the April payment, $370,200.00 into an interest-bearing account with the Court until the Court determines whether A&M breached the Agreement; (iii) requiring A&M claw back from Archibald any amounts due from the salary A&M paid to him from April 8, 2021 to the present; (iv) requiring A&M to pay salaries to its president, directors, and officers no greater than their salaries on December 6, 2019, and cease payment of bonuses or distributions to them until resolution of this litigation; (v) requiring A&M, if it dissolves, to comply with the Illinois Business Corporations Act and its Delaware counterpart; (vi) preventing A&M from changing its name and corporate structure, or adding share classes, without written consent of all shareholders, including Meek; and (vii) preventing A&M from transferring its assets to another entity, except for its payments due under the Agreement. Motion at 1–2.

Before resolving the motion for temporary restraining order/preliminary injunction, the Court must address several procedural issues. While Meek seeks a temporary restraining order, the motion fails to reveal any emergency. *See* Motion.

5

Accordingly, the Court construed his motion as a request for a preliminary injunction and had the parties brief the motion. *See Hudson City Savings Bank v. Barrow*, 782 Fed. Appx. 225, 225 n.1 (3d Cir. 2019). Defendants[3] filed their Response (R. 7, Resp.), and Meek filed his Reply (R. 11, Reply).

Meek, in his Reply, attaches various exhibits, namely Exhibits 2 through 5 (R. 11-2, 11-3, 11-4, and 11-5), that were not included with his original motion. It is well-established that a reply brief should not present new arguments or incorporate new evidence for arguments that were not properly supported in an opening brief. *See, e.g., Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) ("Due process, we have cautioned, requires that a plaintiff be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims."); *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond."); *Horvath v. Apria Healthcare, LLC*, 2019 WL 5725378, at *2 (N.D. Ill. Nov. 5, 2019) ("'A reply brief is for replying'—not for sandbagging." (quoting *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987)); *Alston v. Forsyth*, 379 Fed. Appx. 126, 129 (3d Cir. 2010) ("There is cause for concern where a movant presents new arguments or evidence for the first time in a summary judgment reply

---

[3]The Court notes that while Meek's motion is directed against A&M only, both A&M and Archibald have responded to the motion.

brief"). Accordingly, the Court strikes Exhibits 2 through 5 and will not consider them or any corresponding statements in the Reply in evaluating Meek's motion.

## Choice of Law

Before evaluating the merits of Meek's motion, the Court must also briefly address the choice of law issue. Both Meek and Defendants reference the Agreement's choice of law provision, which states that it "shall be governed by the substantive and procedural laws of the State of Delaware." R. 5, Memo. at 5 n.1; Resp. at 5 n.3. The law is clear that where a valid contract has been formed, a court should enforce the choice of law provision contained within that contract unless it violates the forum state's public policy, and the forum state has a materially greater interest in the litigation than the chosen state. *See, e.g., Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1413 (N.D. Ill. 1996) (following § 187 of the Restatement (Second) of Conflict of Laws where "as here, the parties to a contract have included an express choice of law provision in their contract"). Accordingly, because both parties agree that Delaware law shall govern, the choice of law provision does not violate Illinois public policy, and Illinois does not have a materially greater interest than Delaware, the Court looks to Delaware law, as it must, pursuant to the Agreement.

## Standard of Review

Both a preliminary injunction and temporary restraining order are "extraordinary and drastic" remedies and should not be granted unless the movant "*by a clear showing*, carries the burden of persuasion." *Bullock v. Carney*, 463 F. Supp.

7

3d 519, 523 (D. Del. 2020) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction or temporary restraining order, a movant "must establish that he is likely to succeed on the merits and will suffer irreparable harm in the absence of preliminary relief." *Id.* (internal citations omitted); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If a movant can meet its burdens on the first two factors, then the court should consider two more factors: whether the balance of equities tips in the movant's favor and whether an injunction is in the public interest." *Id.* (internal citations omitted); *see also Reilly*, 858 F.3d at 179. Then, the court should balance all four factors together to determine whether they favor granting preliminary relief. *Id; see also Reilly*, 858 F.3d at 179. It is within this framework that the Court analyzes Meek's motion.

**Analysis**

The Court begins with the irreparable harm factor. In evaluating this factor, "[t]he relevant inquiry is whether, at the time the injunctive relief is to be issued, the party seeking the injunction is in danger of suffering irreparable harm. The irreparable harm alleged must be actual and imminent, not merely speculative." *Eaton Corp. v. Geisenberger*, 486 F. Supp. 3d 770, 798 (D. Del. 2020) (internal citations omitted). Moreover, a "purely economic injury, compensable in money, cannot satisfy this requirement, unless the potential economic loss is so great that it threatens to cause an injury that cannot be righted with money alone." *Id.* (internal citations omitted); *see also Reilly*, 858 F.3d at 179 n.4 ("[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm.") (citing

8

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 n.3 (3d Cir. 1988)). Lack of irreparable harm is a sufficient basis to deny a plaintiff's request for a preliminary injunction. *Eaton Corp.*, 486 F. Supp. 3d at 801 (finding that because the plaintiffs had failed to establish that they would suffer irreparable harm without preliminary injunctive relief, the court did not need to reach the remaining factors).

Meek's request for injunctive relief rests on A&M's failure to pay the April 2021 payment due under the Agreement. He first argues that he will suffer irreparable harm because his current harm will not be fully rectified after a judgment in his favor and indeed, will not be rectified "in any way." Memo. at 8.[4] This is based on A&M's statement on April 7, 2021 that it is in precarious financial straits and that it is considering whether to simply close up shop. *Id.* He similarly argues that he will have no adequate remedy at law as any judgment he obtains against A&M will be ineffectual if A&M will soon be insolvent or chooses to shut its doors. *Id.* at 8. Meek surmises he would be unable to obtain damages from A&M because it may become insolvent before a final judgment can be entered and collected. *Id.* at 8–9. (citing *Roland Mach. Co.,* 749 F.2d at 386; *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983); and *Bowman v. Dixon Theatre Renovation, Inc.*, 581 N.E.2d 804, 808 (Ill. App. Ct. 1991)). Meek further contends that A&M's own statements that it faces insolvency and that its financial condition is worse than it thought evidence imminent insolvency. *Id.* at 9. Without citing any legal authority, Meek then insists that A&M must produce evidence that it will indeed have the

---

[4] While Meek states that he need not prove irreparable harm if the Court applies Delaware law (Memo at 8 n.3), the Court construes his statement as an error.

9

means to pay Meek the $370,200.00 it owes him should it lose at trial, and that it likely cannot produce such proof. *Id.*[5]

Defendants respond that Meek's alleged injury is a purely economic injury and compensable in money. Resp. at 8. As such, Defendants contend that Meek has provided no valid explanation as to how the harm he has allegedly suffered is irreparable. As for Meek's claim that A&M is on the verge of bankruptcy, Defendants point out that Meek fails to adduce any evidence in support of this contention. *Id.* at 8–9. On the contrary, Defendants submit that the evidence reveals that A&M is not on the verge of insolvency. In support of their argument, they attach an affidavit from Archibald, A&M's President. R. 7-1, Archibald Aff. Archibald attests that A&M "is not insolvent and is not contemplating filing for bankruptcy." *Id.* ¶ 20. Admittedly, he also testifies that A&M "does not have sufficient assets to pay its operating expenses and to pay the installment payment to [Meek]." *Id.* ¶ 19. This, according to Archibald, stems from the financial downturn A&M has suffered as a result of the COVID-19 pandemic. *Id.* ¶ 15.

The Court agrees with Defendants that Meek fails to satisfy the irreparable harm element necessary for the issuance of a preliminary injunction (and, for that matter, a temporary restraining order). This case concerns a contractual dispute based on A&M's alleged failure to pay amounts due under the Agreement. In fact, in each count of the Complaint except for Count I, Meek seeks exclusively monetary damages: in the breach of contract count against A&M and the unjust enrichment

---

[5]Meek also attaches to his Memorandum an affidavit from himself, but this does not provide any additional evidentiary support. *See* Memo., Exh. 2.

count against Archibald, Meek seeks monetary damages in the amount of $370,200.00, prejudgment interest, and attorneys' fees and costs (Compl. at 31, 33); and in the tortious interference with contract count against Archibald and the breach of fiduciary duty count against Archibald, Meek seeks monetary damages in the amount of $370,200.00, prejudgment interest, punitive damages, and attorneys' fees and costs (Compl. at 32, 34). It then follows that monetary damages can repair Meek's alleged financial injury. If Meek's injury is purely economic and compensable in money, then he cannot have irreparable harm. *See Eaton Crop.*, 486 F. Supp. 3d at 798.

Meek has also failed to demonstrate that his potential economic loss is "so great that it threatens to cause an injury that cannot be righted with money alone." *Eaton Crop.*, 486 F. Supp. 3d at 798. Instead, Meek suggests that A&M's statements regarding its financial position necessitate injunctive relief. The Court does not need any additional evidence or an evidentiary hearing regarding A&M's financial position—Archibald has admitted that, at this time, A&M does not have enough money to both pay Meek the alleged amounts due under the Agreement and its operating expenses. Archibald Aff. ¶ 19. However, nothing suggests that A&M is about to file for bankruptcy, especially to avoid paying any amounts alleged owed under the Agreement. Meek admits that as of March 31, 2021, A&M had $546,440.62 in its checking and saving accounts. *Id.* The Court also cannot ignore the testimony of A&M's president, Archibald, stating that A&M "is not insolvent and is not contemplating filing for bankruptcy." Archibald Aff. ¶ 20. Meek's fear regarding

11

A&M's filing for bankruptcy is speculative only, and speculative harm cannot be the basis for irreparable harm. *See Eaton Corp.*, 486 F. Supp. 3d at 798. Additionally, if A&M presents defenses or arguments that it has no obligation to pay Meek the alleged amounts owed under the Agreement, A&M's current financial situation may even be irrelevant.

The case of *Angelo, Gordon & Co., L.P.*, cited by Defendants, is instructive. In *Angelo, Gordon & Co., L.P.*, the plaintiffs owned accounts that held notes that were indebted by the corporate defendant. 805 A.2d at 223. They brought a preliminary injunction motion to enjoin the proposed merger between the corporate defendant and another company. *Id.* at 222. For the irreparable harm element, the plaintiffs advanced several arguments to enjoin the merger to prevent irreparable injury, including the fact that the corporate defendant was insolvent and its merger partner would make cash expenditures that would prevent the plaintiffs from collecting any judgment for monetary damages rendered in their favor. *Id.* at 230. The court found no irreparable harm based on this argument. *Id.* at 231. It noted that the merger could prove not to be a profitable enterprise and that it might not able to pay damages if the plaintiffs obtained a monetary judgment in the case. It also did not find it surprising that the plaintiffs found such a prospect "likely and threatening" given the financial history of both the corporate defendant and its merger partner over the past couple of years. *Id.* However, the court concluded that this possibility alone could not

justify entry of an injunction against the merger because such an injury was speculative and would only be felt after the passage of time following the merger. *Id.*

Here, unlike the corporate defendant in *Angelo, Gordon & Co., L.P.*, A&M's insolvency is questionable, and nothing suggests that A&M plans to file for bankruptcy. *See* Archibald Aff. ¶ 20. Meek's proposed injunctive relief is based entirely upon a fear that A&M would not be able to pay a monetary judgment if Meek prevails at trial. In his Reply, Meek suggests that A&M will lack the resources to pay a judgment against it a year or more from now based on its own statements. Reply at 5. Yet, the Court cannot predict the defenses Defendants will raise and whether Meek will receive a judgment in his favor. Like the plaintiffs' fear in *Angelo, Gordon & Co., L.P.*, this suspicion is speculative only and cannot justify entry of injunctive relief.

Surprisingly, even though Meek argues that Delaware law applies to this dispute, he cites to Illinois state and federal cases for support in both his Memorandum and Reply.[6] These cases do not apply Delaware law in any manner, but, regardless, they do not bolster Meek's position because each case is distinguishable. For example, as Defendants note, in *Roland Mach. Co.,* the plaintiff was seeking a preliminary injunction against the defendant to prevent it from terminating a construction equipment dealership agreement. Resp. at 9 n.6 (citing 749 F.2d at 381–82). The Seventh Circuit noted that where the only remedy at trial is damages, two of the requirements for receiving injunctive relief, (irreparable harm and no adequate remedy at law) merge. 749 F.2d at 386. It then listed several reasons

---

[6]Meek even states in his Reply that "all of A&M's cases applying Illinois law are of no moment." Reply at 7 n.5. The Court agrees, and the same standard must apply to Meek.

13

why a damages remedy could be inadequate, including the fact that damages "may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Id.* However, the court found that the plaintiff had shown it had no adequate remedy at law because the calculation of damages was a difficult and "not very satisfactory" process. *Id.* at 391. Significantly, the court found that the district court erred "in finding that without the preliminary injunction [the plaintiff] probably would go out of business." *Id.* Not only did the Seventh Circuit reverse the district court's granting of the preliminary injunction, but the defendant's potential insolvency was not even at issue in the case. Moreover, the inadequate remedy at law element is not an element required for obtaining injunctive relief under Delaware law. *See Bullock*, 463 F. Supp. at 523.

In his Reply, Meek also references the Delaware case of *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155 (Del. Ch. 2014), arguing that a threat of insolvency threatens the irreparable harm prong in cases involving "purely money damages." Reply at 3. However, the court made no such finding in the context of a preliminary injunction. In *Quadrant Structured Prods. Co.*, the court was reviewing a motion to dismiss, not a request for a temporary restraining order or preliminary injunction. 102 A.3d at 166. In its opinion, the court noted that the possibility that the defendant would not have sufficient resources to pay a money judgment could make injunctive relief appropriate. *Id.* at 203. It then refused to dismiss the plaintiff's counts for injunctive relief but acknowledged that the plaintiff could seek a

14

permanent injunction at the appropriate stage in the case. *Id.* The court's holding does not provide support for the Court to grant a preliminary injunction here.

At bottom, Meek essentially seeks the Court's assistance to hold potential monies owed under the Agreement in abeyance for his benefit *if* he prevails on the merits in this case. Yet, Meek cites to no legal authority for such a proposition. Indeed, the legal authority is to the contrary. The Court agrees with Defendants that under Delaware law, equitable prejudgment attachment is not recognized except in limited circumstances to compel the appearance of a defendant. Resp. at 12 n.8 (citing *In re Estate of Beekhuis*, 1992 WL 5689, at *2 (Del. Ch. Jan. 13, 1992)). Moreover, the Court agrees that Delaware courts have held that injunctive relief is not available to preserve a source of funds to satisfy a possible future judgment. *Id.* (citing *QRS 10-12(TX), Inc. v. CalComp Tech., Inc.*, 1999 WL 350491, at *3 (Del. Ch. May 12, 1999); *Urugami v. Century Int'l Credit Corp.*, 1997 WL 33175027, at *2 (Del. Ch. Dec. 2, 1997); *Neuberger v. Olson*, 1992 WL 50873, at *6 (Del. Ch. Mar. 11, 1992)).

Accordingly, the Court finds that Meek has failed to show that he would suffer irreparable harm absent a preliminary injunction, and, on this basis alone, denies his motion.

**Conclusion**

For the foregoing reasons, the Court denies Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction. The Court directs Defendants to answer or otherwise plead in response to the Complaint by June 11, 2021. On or before June 18, 2021, the parties shall file a joint initial status report. A template for the Joint Initial Status Report, setting forth the information required, may be found

at http://www.ilnd.uscourts.gov/Judges.aspx by clicking on Judge Valderrama's name and then again on the link entitled 'Joint Initial Status Report.' The parties are further ordered to review all of Judge Valderrama's standing orders and the information available on his webpage.

Dated: May 21, 2021

_____
United States District Judge
Franklin U. Valderrama